# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| CHRISTOPHER GEORGE ARNONE, | § § § | |
| Plaintiff, | § § | |
| | § | Civil Action No. 3:17-cv-03027-E |
| v. | § § | |
| SYED, et al, | § § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are motions to dismiss plaintiff Christopher George Arnone's Fourth Amended Complaint filed by defendant Ron Goethals (Doc. No. 90) and defendants Dallas County, Texas, William T. Hill, Jr., and Jim Bowles (County Defendants) (Doc. No. 92) and Arnone's Motion to Extend Deadline to Respond and for Limited Discovery (Doc. No. 99). Having considered the motions, responses, replies, and applicable law, the Court concludes it should GRANT defendants' motions to dismiss and DENY Arnone's motion for limited discovery for the following reasons.

### BACKGROUND

The following is taken from Arnone's Fourth Amended Complaint. Arnone was charged with allegations of sexual abuse against his son in November 2002. The Dallas County District Attorney's office (DA's office) presented Arnone with a plea deal, and he entered an open plea of nolo contendere to a single charge of felony injury to a child. The trial court placed Arnone on ten-years deferred adjudication community supervision.

As a term of his community supervision, Arnone was placed on the sex offender caseload and required to submit to polygraph tests. Arnone was removed from the sex offender caseload

due to his polygraph test results.  The DA's office moved to adjudicate guilt, a warrant was issued, and Arnone was arrested by the Dallas County Sheriff's Office (Sheriff's office).  In April 2003, the trial court adjudicated Arnone's guilt and sentenced him to prison for fifteen years.  Arnone served almost thirteen years in prison and, during that time, filed direct appeals and writs of habeas corpus.  In October 2015, the Texas Court of Criminal Appeals granted an application for writ of habeas corpus, concluding the adjudication of Arnone's guilt, based on his dismissal from sex offender treatment as a result of failed polygraph tests, was improper.  The Court set aside Arnone's adjudication of guilt, and Arnone was released from custody in November 2015.

On October 31, 2017, Arnone filed this action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. He alleges Goethals of the "Dallas County Community Supervision and Probation Department" (DCCS), DA Hill, and Sheriff Bowles,[1] as Dallas County policymakers, supervised and directly participated in an unconstitutional "polygraph policy" despite the fact that polygraph test results had long been inadmissible evidence.  Under this policy, DCCS used polygraph tests "to remove a defendant from sex offender probation or … as a violation or indicator of [a defendant's] lack of successful progress," the DA's office "sought revocations/adjudications of community supervision and deferred adjudication based upon information provided to them by [DCCS]," and the Sheriff's office "arrest[ed] and confine[d] defendants without bail ... on motion to revoke probation or deferred adjudication."  Arnone "asserts direct liability against Dallas County for (1) unconstitutional policies; (2) [s]upervisor liability ... against Dallas County and delegated

---

[1] The County Defendants request that the official capacity claims against Bowles be dismissed because he died in August 2018.  Pursuant to Federal Rule of Civil Procedure 25(b), the Court substitutes Lupe Valdez, Bowles's successor as sheriff, for Bowles with respect to Arnone's claims against the "County … and the office of the sheriff of the County."  *See* FED. R. CIV. P. 25(b) (providing for automatic substitution of public officer's successor when "officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending").  However, for purposes of clarity, the Court will continue to refer to Bowles in this opinion and order.

policymakers as well as liability against the responsible individuals; (3) failure to supervise and adequately train probation officers; (4) failure to supervise and adequately have adequate policies for District Attorneys; (5) malicious prosecution; and (6) conspiracy."  Arnone also alleges "inaction and failure to intercede on the part of the official policymakers/decision makers."

Together, the County Defendants move to dismiss Arnone's claims against them because (1) the statute of limitations bars all of Arnone's claims; (2) Hill is entitled to absolute prosecutorial immunity, qualified immunity, and sovereign immunity; (3) Bowles is entitled to derivative judicial immunity and qualified immunity; and (4) Arnone failed to plead sufficient facts to state a *Monell* claim against Dallas County or a claim against either Hill or Bowles.   In his motion to dismiss, Goethals asserts the claims against him should be dismissed because (1) the statute of limitations bars the claims; (2) Goethals is entitled to derived judicial immunity, qualified immunity, and Eleventh Amendment immunity;  and (3) Arnone fails to plead facts to state a claim against Goethals.

## APPLICABLE LAW

### A.   *LEGAL STANDARDS*

Federal Rule of Civil Procedure 8(a) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted."  FED. R. CIV. P. 12(b)(6).  The Fifth Circuit analyzes motions to dismiss based on immunity under Rule 12(b)(6), rather than Rule 12(b)(1), because "the arguments for immunity are attacks on the existence of a federal cause of action."  *Morrison v. Walker*, 704 F. App'x 369, 372 n.5 (5th Cir. 2017) (citing *Daniel v. Ferguson*, 839 F.2d 1124, 1127 (5th Cir.

1988) ("[W]hen a defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper procedure ... is to find that jurisdiction exists and to deal with the objection as a direct attack on the merits of the plaintiff's case.")).

On a Rule 12(b)(6) motion to dismiss, a court may consider only the pleadings, including attachments to the complaint and attachments to the motion if they are referred to in the complaint and central to the plaintiff's claims, and "matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205 (quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint does not show the plaintiff is plausibly entitled to relief. *Iqbal*, 556 U.S. at 678.

B.      *42 U.S.C. § 1983*

Section 1983 provides a cause of action for individuals who have been "depriv[ed] of

[their] rights, privileges, or immunities secured by the Constitution and laws" of the United States by a "person" acting under color of state law.  42 U.S.C. § 1983; *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  Thus, for relief under section 1983, a plaintiff must establish the conduct complained of (1) was committed under color of law, and (2) deprived the plaintiff of rights secured by the Constitution or laws of the United States.  *See Hernandez v. Maxwell*, 905 F.2d 94, 95 (5th Cir. 1990).

In a section 1983 action, "[t]he performance of official duties creates two potential liabilities, individual-capacity liability for the person and official-capacity liability for the municipality." *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 484 (5th Cir. 2000).  A suit against a governmental employee in the employee's official capacity does not involve personal liability and is "another way of pleading an action against an entity of which [the employee] is an agent."  *Id.* at 483 (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)).

Local governments also are "persons" within the meaning of section 1983.  *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978).  However, a local government "may not be sued under § 1983 for an injury inflicted solely by its employees or agents."  *Id.* at 694.  "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.*; *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 532 (5th Cir. 1996).  "In order to hold a municipality or local government liable under § 1983 for the misconduct of one if its employees, a plaintiff must initially allege that an official policy or custom was the cause in fact of the deprivation of rights inflicted," and the "description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts." *Spiller v. City of*

*Texas City*, 130 F.3d 162, 167 (5th Cir. 1997) (internal quotation marks and citation omitted).

ANALYSIS

A.    STATUTE OF LIMITATIONS

Defendants first contend the statute of limitations bars Arnone's claims because each possible date on which his causes of action accrued occurred more than two years before Arnone filed suit.  The statute of limitations may be proper grounds for a Rule 12(b)(6) dismissal if it is evident from a plaintiff's complaint that the action is barred.   *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).  There is no federal statute of limitations for section 1983 claims, and courts look to the forum state for the applicable limitations period.  *See Burrell v. Newsome,* 883 F.2d 416, 418 (5th Cir.1989).  In Texas, the applicable statute of limitations period is two years.  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a).

According to Arnone's Fourth Amended Petition, he was arrested on March 20, 2003 after the DA's office filed the motion to adjudicate.  The state court adjudicated Arnone's guilt and sentenced his to fifteen years' confinement on April 23, 2003.  On October 7, 2017, the Texas Court of Criminal Appeals set aside the adjudication of guilt.[2]  On November 13, 2015, the state judge entered an order discharging Arnone from community supervision and dismissing all proceedings in the criminal case.[3]  Arnone was released the same day.  On October 31, 2017, Arnone filed this suit.

Goethals argues Arnone's claims seeking damages for false arrest and imprisonment in violation of the Fourth Amendment accrued either March 12, 2003, when the State moved to proceed to adjudication, or March 20, 2003, when Arnone was arrested, because Arnone was

---

[2]  *See Ex Parte Arnone*, No. WR-60,218-02, 2015 WL 5853688, at *1 (Tex. Crim. App. Oct. 7, 2015).

[3]  The Court takes judicial notice of the state court records on file in *Arnone v. State*, F-0201999 (*see* internet docket sheet available at http://courtecom.dallascounty.org/publicaccess).  *See Bauer v. Texas*, 341 F.3d 352, 362 n.8 (5th Cir. 2003) (noting that court may take judicial notice of public court records).

aware of the allegedly unconstitutional policies as of those dates.  Goethals contends Arnone's claims for due process violations accrued on October 7, 2015, when the Texas Court of Criminal Appeals set aside the adjudication of guilt.  The County Defendants maintain Arnone's cause of action accrued on or about April 23, 2003, when the state court adjudicated guilt and sentenced Arnone to prison or, alternatively, on October 7, 2015, when the adjudication of guilt was set aside. Arnone responds that, because his cause of action is akin to malicious prosecution, the statute of limitations began to run when he was released and his conviction was overturned.

Federal law governs when a plaintiff's cause of action accrues.  *Wallace v. Kato,* 549 U.S. 384, 388 (2007).  A cause of action accrues when the plaintiff becomes aware of the injury forming the basis of the action.  *Piotrowski v. City of Houston,* 51 F.3d 512, 516 (5th Cir. 1995). However, in a section 1983 claim seeking damages "for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a plaintiff must prove "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).  The Supreme Court imposed this requirement on section 1983 plaintiffs to avoid collateral attacks by plaintiffs on convictions that remain outstanding.  *Id.* at 486.

The Court agrees with Arnone that his claims, which are more analogous to the common-law tort action of malicious prosecution than false imprisonment, do not accrue until the underlying criminal proceeding terminated in Arnone's favor.  *See, e.g., Castellano v. Fragozo*, 352 F.3d 939, 959–60 (5th Cir. 2003) (claim that prosecution obtained arrest and conviction by using manufactured evidence and perjured testimony directly implicated the validity of his

conviction and limitations could not accrue until case was dismissed for insufficient evidence by state trial court following remand from court of criminal appeals); *Brandley v. Keeshan*, 64 F.3d 196, 199 (5th Cir. 1995), *abrogated on other grounds by Wallace*, 594 U.S. 384 ("An acquittal, an order of dismissal based on the running of the statute of limitations on the crime or an order of dismissal reflecting an affirmative decision not to prosecute are examples of such a termination."); *Brown v. City of Houston*, 297 F. Supp.3d 748, 759–61 (S.D. Tex. 2017).

Although the Texas Court of Criminal Appeals set side Arnone's adjudication of guilt on October 15, 2015, the proceedings against him were not dismissed until the trial court issued its order on November 13, 2015. Accordingly, the Court finds Arnone, having filed this case on October 31, 2017, brought suit within the two-year statute of limitations and, thus, defendants' motions to dismiss on this basis are denied. *See, e.g., Brown*, 297 F. Supp.3d at 761.

B.   *INDIVIDUAL CAPACITY CLAIMS*

The caption of Arnone's Fourth Amended Complaint indicates he is suing Hill, Bowles, and Goethals in their individual capacities, and defendants move to dismiss those claims. With respect to Bowles, Arnone responds that he "has not sued [Bowles] individually, but rather the County of Dallas and the office of the sheriff of the County, insofar as that office makes Dallas County policy which was used to breach [his] constitutional rights." Thus, to the extent his complaint appears to assert any claims against Bowles in his individual capacity, the Court finds Arnone has abandoned those claims. The Court notes that Arnone alleges the very same sort of liability against both Hill and Goethals. However, because Arnone has not explicitly responded that he has not sued them in their individual capacities, the Court assumes he intends to assert such claims. The Court first addresses the defendants' motion to dismiss the claims against Hill and Goethals on the basis of absolute and qualified immunity. *See Hafer v. Melo*, 502 U.S. 21,

25 (1991) ("[O]fficials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses ....").

    1.  <u>Absolute Immunity</u>

       *a.*    *Hill*

The County Defendants assert the individual capacity claims against Hill must be dismissed because he is entitled to absolute prosecutorial immunity.  Prosecutors are absolutely immune in a civil rights suit for their conduct in preparing for the initiation of judicial proceedings and presenting the State's case.  *See Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976); *Esteves v. Brock*, 106 F.3d 674, 676 (5th Cir. 1997).  Indeed, "[a] prosecutor enjoys absolute immunity when his actions are 'intimately associated with the judicial phase of the criminal process.'"  *Loupe v. O'Bannon*, 824 F.3d 534, 538 (5th Cir. 2016) (quoting *Imbler*, 424 U.S. at 430).  This "includes all actions which occur in the course of [the prosecutor's] role as an advocate for the State."  *Cousin v. Small*, 325 F.3d 627, 632–33 (5th Cir. 2003) (internal quotation marks and citations omitted).  Absolute immunity also may extend to protect supervisory prosecutors from claims that their supervision, training, or information-system management was constitutionally inadequate.  *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009).  "[T]he broad scope of absolute prosecutorial immunity may even reach an apparently administrative or investigative function if that function 'require[s] legal knowledge and the exercise of related discretion.'"  *Moon v. City of El Paso*, 906 F.3d 352, 359 (5th Cir. 2018) (quoting *Van de Kamp*, 555 U.S. at 344).

The Supreme Court has adopted a "functional approach" to determine whether absolute immunity attaches to a particular kind of prosecutorial activity.  *See Loupe*, 824 F.3d at 538.  A court must define the conduct at issue in the light most favorable to the plaintiff and then

determine if it falls within the scope of prosecutorial immunity.  *Hoog–Watson v. Guadalupe County*, 591 F.3d 431, 437–38 (5th Cir. 2009).

Here, Arnone alleges Hill "directly supervised or participated in the violations of [Arnone's] federally protected rights … [and] the polygraph policy."  Specifically, he complains of Hill's supervision and training on (1) urging the court to impose community supervision conditions requiring polygraph tests without adequate notice and waivers, (2) seeking adjudications of guilt and/or revocations of community supervision based on failed polygraph test results, and (3) the admissibility of polygraph evidence.  All the conduct alleged, unlike administrative duties such as "hiring, payroll administration, the maintenance of physical facilities, and the like" that fall outside the scope of absolute immunity, requires "legal knowledge and the exercise of related discretion" and, thus, relates to a district attorney's core prosecutorial duties.  *Van Kamp*, 555 U.S. at 344 (prosecutor has absolute immunity from claims related to supervision, policymaking, and training on *Brady* obligations).  Accordingly, absolute prosecutorial immunity protects Hill from liability and Arnone's claims against Hill in his individual capacity are dismissed with prejudice.  *See, e.g., Moon v. City of El Paso*, No. SA-06-CA-925-OG, 2009 WL 10697943, at *3–5 (W.D. Tex. Apr. 22, 2009).

       *b.*     *Goethals*

Goethals asserts he is entitled to derived judicial immunity from liability for Arnone's individual-capacity claims.  Probation officers "who carry out functions that are adjudicatory in nature, or that have an integral relationship to judicial decision making, are protected by absolute quasi-judicial immunity."  *Norman v. Cmty. Supervision & Corr. Dep't*, No. 7:11-CV-023-O-KA, 2011 WL 1457524, at *1 (N.D. Tex. Mar. 23, 2011), *report & recommendation adopted*, No. 7:11-CV-23-O-KA, 2011 WL 1457469 (N.D. Tex. Apr. 15, 2011).  For example, preparing

and submitting a presentence report is conduct protected by absolute immunity because the report is an integral part of the sentencing process and the probation officer is acting under the court's direction.   *See Spaulding v. Nielsen*, 599 F.2d 728, 729 (5th Cir. 1979).   However, immunity does not extend to all aspects of a probation officer's job.   *Id.*   In *Galvan v. Garmon*, 710 F.2d 214 (5th Cir. 1983), the Fifth Circuit determined that a probation officer's conduct in preparing a petition to revoke at the officer's own initiative and during "a different phase of the criminal process less intimately associated with the judiciary" did not give rise to absolute immunity.   *Id.* at 215–16.   Instead, qualified immunity could protect the probation officer.   *Id.*

Here, Arnone complains Goethals directly supervised or participated in a policy whereby probationers could be required to submit to polygraph tests and the results of those tests could be bases for a probation violation and to seek revocation and/or adjudication through the DA's office.   Arnone further alleges a failure to train on state law that polygraph results are not admissible evidence.   The Court finds this complained-of conduct by Goethals in supervising and training on polygraph tests and reporting community supervision violations is not adjudicatory in nature and, therefore, absolute quasi-judicial immunity does not protect Goethals from liability.

2. Qualified Immunity

Arnone asserts he is entitled to qualified immunity because the requirement for an arrest and conviction without probable cause does not apply to probationers and there is no clearly established law creating liability for a probation agent's policies for gathering evidence for a trial court.[4]   The doctrine of qualified immunity protects government officials from liability "so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a

---

[4] Because the Court finds Hill is entitled to absolute prosecutorial immunity, it does not reach whether Hill also is entitled to qualified immunity.

reasonable person would have known.'" *Lincoln v. Turner*, 874 F.3d 833, 847 (5th Cir. 2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).  It "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

If a defendant asserts qualified immunity, the plaintiff bears the burden of pleading facts to "demonstrate liability and defeat immunity."  *Shaw v. Villanueva*, 918 F.3d 414, 416–17 (5th Cir. 2019); *see also McLin v. Ard*, 866 F.3d 682, 688 (5th Cir. 2018).  The plaintiff must show (1) the official violated a statutory or constitutional right and (2) the right was clearly established at the time of the challenged conduct.  *Shaw*, 918 F.3d at 417.[5]  The court may exercise discretion in deciding which of the two prongs should be addressed first.  *Id.*; *see also Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019) (court "can decide one question or both").

A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right."  *Lincoln*, 874 F.3d at 848 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  There need not be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  *Id.* at 848 (citation omitted).  The law can be clearly established despite "notable factual distinctions between the precedents relied on and the cases then before the [c]ourt, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights."  *Id.*

---

[5]  Although discovery typically is stayed pending a ruling on a defendant's entitlement to the defense of qualified immunity, a court may, under certain circumstances, permit limited discovery that is narrowly tailored to facts the Court needs to rule on that defense.  *See Wicks v. Miss. State Employment Servs., Inc.*, 41 F.3d 991, 994–95 (5th Cir. 1995).  Here, the Court finds no further factual development is necessary to determine whether the defense is available to defendants.

According to Arnone, defendants' conduct violated his Fourth Amendment protections against unreasonable seizures, Fifth Amendment protections against self-incrimination, the Sixth Amendment, the Eighth Amendment protections against cruel and unusual punishment and the Fourteenth Amendment protections imposing requirements of due process and equal protection of law.[6]  He alleges he was required to take polygraph tests despite no notice or waiver of his Fifth Amendment rights or his right to counsel.  He was then incarcerated without probable cause in violation of the Fourth and Fourteenth Amendments when the DA's office moved to adjudicate his guilt.

The record from Arnone's state court action[7] shows the judge entered the deferred adjudication order in November 2002.  Condition (o) required Arnone, within thirty days, to "begin participating in sex offender counseling" and to "abide by any and all treatment directives, comply with rules and regulations of the approved agency and continue in said treatment until released by the Court."  On March 13, 2003, the DA's office filed a motion to proceed with an adjudication of guilt, alleging Arnone violated condition (o) in that he "did not abide by the rules and regulations of the facility" and "was unsuccessfully discharged from sex offender treatment at Central Psychological Services due to failing that [sic] last two offense polygraphs taken and for not accepting responsibility for offense which had made him untreatable in an outpatient facility."  The judge issued a capias for the community supervision violation, and Arnone was arrested.  Thereafter, Arnone's counsel objected to use of the polygraph test and test results for any purpose in both a motion for expenses for expert witness, which the judge granted, and a motion to exclude evidence of polygraph examination.  On May

---

[6]  Arnone does not allege any facts in support of, or even otherwise mention, violations of the Eighth Amendment or equal protection and, accordingly, fails to allege any possible cause of action on either ground.

[7]  *Arnone v. State*, F-0201999 (*see* internet docket sheet available at http://courtecom.dallascounty.org/publicaccess).

20, 2003, however, the judge entered an order adjudicating guilt and sentencing Arnone to fifteen years' confinement.

Under Texas law, the state judge may impose a term of community supervision in a criminal case and may impose "any reasonable condition … that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant." *See* TEX. CODE CRIM. PRO. art. 42A.301 (formerly, CRIM. PRO. art. 42.12, § (11)(a)). Texas law also authorizes judges to establish probation departments and employ personnel to, among other things, supervise and rehabilitate defendants placed on community supervision and enforce the conditions of community supervision. *See* TEX. GOV'T CODE ANN. §§ 76.002, 76.004(b); CRIM. PRO. art. 42A.101; *see also Clark v. Tarrant County*, 798 F.2d 736, 744 (5th Cir. 1986); *Yowman v. Jefferson County Cmty. Supervision & Corr. Dep't*, 370 F. Supp.2d 568, 590 (E.D. Tex. 2005).

Courts have long approved polygraph test requirements as part of a community supervision condition. *See Selby v. State*, 525 S.W.3d 842, 853 (Tex. App.—Beaumont 2017, no pet); *Mitchell v. State*, 420 S.W.3d 448, 450 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *see also United States v. Winding*, 817 F.3d 910, 914–15 (5th Cir. 2016) (same for supervised release); *United States v. Cuneo*, 554 F. App'x 313, 317–18 (5th Cir. 2014). A probationer may invoke the Fifth Amendment privilege to polygraph questioning when a truthful answer would expose him to prosecution for a different crime, but a polygraph "does not convert [a probationary] question-and-answer session into a Fifth Amendment violation." *United States v. Locke*, 482 F.3d 764, 767–68 (5th Cir. 2007) (citing *Minnesota v. Murphy*, 465 U.S. 420, 435–36 n. 7 (1984); *United States v. Willis*, 651 F. App'x 291, 293–94 (5th Cir. 2016) (same when polygraph is condition of supervised release).

14

Here, Arnone does not complain or even allege that he was required to respond to any incriminating questions. *Compare Dansby v. State*, 448 S.W.2d 441, 452 (Tex. Crim. App. 2014) (holding defendant's right against self-incrimination was implicated by community supervision condition requiring him to answer polygraph questions about other victims). The mere fact that he was required to submit to polygraph questioning as a condition of his community supervision did not constitute an infringement of the privilege against self-incrimination. *See Locke*, 482 F.3d at 767–68. And, because there is no "custody," a probationer has no federal right to have an attorney present for the questioning as part of his probation. *See Murphy*, 465 U.S. at 424 n.3.

Nor do Arnone's allegations show a violation of any clearly established Fourth or Fourteenth Amendment right. Arnone maintains, and the gist of this action is, that DCCS, the DA's office, and the Sheriff's office lacked probable cause to act on his discharge from sex offender counseling because the evidence to establish the underlying reason for his discharge was inadmissible. Ordinary probable cause requirements, however, do not apply in the context of community supervision. *Griffin v. Wisconsin*, 483 U.S. 868, 878 (1987). "A State's operation of a probation system, like its operation of a school, government office or prison, or its supervision of a regulated industry, likewise presents 'special needs' beyond normal law enforcement that may justify departures from the usual warrant and probable-cause requirements." *Id*. at 873–74.

In *Griffin*, the Supreme Court held an unauthenticated tip provided by a police officer, whether or not on the basis of firsthand knowledge, reasonably supported a probationer search, stating it "is both unrealistic and destructive of the whole object of the continuing probation relationship to insist upon the same degree of demonstrable reliability of particular items of

supporting data, and upon the same degree of certainty of violation, as is required in other contexts." *Id*. at 878–79.  In this case, it was reasonable that DCCS would report a violation of community supervision condition (o) when Arnone was discharged from sex offender counseling, even though the evidence to prove the underlying reason for that discharge may have been inadmissible in court.

Further, the Texas Court of Criminal Appeals only first held in 2012 that a trial court abuses its discretion by admitting expert testimony relying entirely on inadmissible polygraph results in a revocation proceeding.  *See Leonard v. State*, 385 S.W.3d 570, 582 (Tex. Crim. App. 2012).[8]  In doing so, the Court noted that, for "more than sixty years, [it had] not once wavered from the proposition that the results of polygraph examinations are inadmissible *over proper objection* because the tests are unreliable."   *Id.* at 578 (emphasis added).  However, it also acknowledged the situation posed a "paradox" because "a trial court has the authority to require polygraph examinations as a condition of community supervision, but the results of those court-ordered polygraph examinations may not be shown to the trial court."  *Id*. at 575.

Arnone was discharged from his sex offender counseling in violation of condition (o) of his community supervision in 2003.  DCCS was well within its authority to monitor Arnone's community supervision and report the violation.  The Court finds Arnone has not met his burden of pleading facts to show Goethals' conduct violated Arnone's constitutional rights.  And, even if the conduct of Goethals did in some way violate a constitutional right, Arnone has not pleaded any facts to show any existing precedent gave reasonable warning that the conduct did so.  *See Lincoln*, 874 F.3d at 848.  Accordingly, Goethals is entitled to qualified immunity, and Arnone's claims against him in his individual capacity are dismissed with prejudice.  *See, e.g., Griffin v.*

---

[8]  Arnone cites *Leonard* in his Fourth Amended Complaint.  He does not cite any other cases to show the conduct he complains of constitutes a violation of a clearly established right.

*Leonard*, 821 F.2d 1124, 1126 (5th Cir. 1987) (probation officer who sought parole violation arrest warrant based on hearsay police report entitled to qualified immunity).

C.    OFFICIAL CAPACITY CLAIMS

Defendants also move to dismiss official capacity claims against Hill and Goethals because the claims are barred by Eleventh Amendment immunity.  As noted above, an official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent.  *See Kentucky*, 473 U.S. at 165 (official capacity suit is, in all respects, to be treated as a suit against the entity).  Both Hill and Goethals assert they are agents of the State of Texas, and not Dallas County.

"Whether an individual defendant is acting on behalf of the state or the local government is determined by state law and by an analysis of the duties alleged to have caused the constitutional violation."  *Esteves*, 106 F.3d at 677.  When "acting in the prosecutorial capacity to enforce state penal law, a district attorney is an agent of the state, not of the county in which the criminal case happens to be prosecuted."  *Id.* at 678.  This includes even alleged misconduct when instituting criminal proceedings to enforce state law.  *Echols v. Parker*, 909 F.2d 795, 801 (5th Cir. 1990).  As discussed above, Arnone's claims against Hill involve prosecutorial conduct.  Accordingly, the claims are against the State of Texas.  *See Esteves*, 106 F.3d at 677.

Arnone is suing Goethals as director of DCCS, which is an arm of the State.  *See Muhammad v. Dallas County Cmty. Supervision & Corr. Dep't*, No. 3:03-cv-1726-M, 2007 WL 2457615, at *3–4 (N.D. Tex. Aug. 30, 2007); *Clark*, 798 F.2d at 745.  As discussed above, Arnone alleges wrongdoing by Goethals related to supervising, and enforcing conditions of, community supervision ordered by the state court judge.  The conduct involves the very duties assigned to DCCS officials by state statute.  *See* GOV'T § 76.004(b).  Accordingly, Arnone's

official capacity claims against Goethals also are claims against the State of Texas.

The Eleventh Amendment acts as a jurisdictional bar to a suit in federal court against a state or one of its agencies unless it is waived by consent of a state or abrogated by Congress. *See Curry v. Ellis County, Tex.*, 2009 WL 2002915, at *3 (N.D. Tex. July 10, 2009). The State of Texas has not waived its immunity by consenting to suit, and Congress has not abrogated that immunity in a section 1983 action. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989). Although Arnone alleges that Hill and Goethals are agents and policymakers of Dallas County, his claims against them in their official capacities are based on their acts and omissions as agents of the State of Texas. Accordingly, the Court finds the section 1983 official capacity claims against Hill and Goethals are not colorable and should be dismissed with prejudice because the State of Texas is immune from suit.[9]

D.   MUNICIPAL LIABILITY CLAIMS

The County Defendants assert Arnone fails to allege sufficient facts to state a section 1983 claim against Dallas County because the conduct complained of relates only to Arnone's community supervision and subsequent adjudication of guilt and, therefore, was conduct on behalf of the State of Texas and not Dallas County. They further contend Arnone has not pleaded facts to show the alleged polygraph policy was the moving force of any violation of his constitutional rights.

A municipality may be liable for a section 1983 claim only if "the unconstitutional conduct [is] directly attributable to the municipality through some sort of official action or

---

[9]   There is an exception to Eleventh Amendment immunity in the case of claims seeking prospective relief against state officials in their official capacities. *See Davis v. Tarrant County*, 565 F.3d 214, 228 (5th Cir. 2009). According to the Fourth Amended Complaint, Arnone "seeks injunctive relief against Dallas County to prevent further abuses by the use of these policies," but he does not seek prospective relief against either Hill or Goethals. Moreover, he alleges no facts to show any real or immediate threat that he will be wronged by a defendant in the future as required for such relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 111–13 (1983).

imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). To state a section 1983 claim against a municipality, a plaintiff must identify (a) a policymaker, (b) an official policy or custom, and (c) a violation of constitutional rights which the official policy or custom was the moving force behind. *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017) (citing *Monell*, 436 U.S. at 690–91).

Official policies generally are "written policy statements, ordinances, or regulations." *Alvarez v. City of Brownsville*, 904 F.3d 382, 389–90 (5th Cir. 2018) (en banc). A plaintiff also can show "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* at 390. Even a single decision may constitute municipal policy in "rare circumstances" if an official or entity possessing "final policymaking authority" for an action "performs the specific act that forms the basis of the § 1983 claim." *Davidson*, 848 F.3d at 395.

A failure to train can constitute a policy if "there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of novices in law enforcement." *Peterson v. City of Fort Worth*, 588 F.3d 838, 849 (5th Cir. 2009). Similarly, a failure to supervise or inadequate supervision can amount to a policy if the municipality "supervises its employees in a manner that manifests deliberate indifference to the constitutional rights of citizens." *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994). To hold a municipality liable for failure to train or supervise, the plaintiff must show that (1) the municipality's training procedures or supervision were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the training policy or in supervising the subordinates, and (3) the inadequate training or supervision directly caused the plaintiff's

injury."  *Clyce v. Hunt County*, 515 F. App'x 319, 323 (5th Cir. 2013).

Arnone seeks to hold Dallas County liable for an unconstitutional polygraph policy and "supervisor liability" and identifies Hill, Goethals, and Bowles as the Dallas County officials with final policymaking authority concerning the actions alleged to have caused the violations of his constitutional rights.  The court must "decide who is the final policymaker, which is an issue of state law."  *Advanced Tech. Bldg. Sols., L.L.C. v. City of Jackson*, 817 F.3d 163, 166 (5th Cir. 2016) (citing *Jett v. Dall. Indep. Sch. Dist.*, 7 F.3d 1241, 1245 (5th Cir. 1993)).

"[A] county may only be held liable for acts of a district attorney when he 'functions as a final policymaker for the county.'"  *Brown v. Lyford*, 243 F.3d 185, 192 (5th Cir. 2001) (quoting *Esteves*, 106 F.3d at 678).  Arnone complains of conduct related to Hill's prosecutorial duties as DA and as a State of Texas official.  Accordingly, the Court finds Hill was not acting as a final policymaker for Dallas County for purposes of section 1983.  *See Esteves*, 106 F.3d at 678; *Krueger v. Reimer*, 66 F.3d 75, 76–77 (5th Cir. 1995) (per curiam) (actions of a Texas district attorney pursuant to his role as State advocate preparing for the initiation of criminal proceedings or trial do not constitute official policy for which a county can be held liable).

Arnone's allegations of wrongdoing by Goethals involve Geothals's supervision and training on the very acts assigned to DCCS officials by state statute.  *See* GOV'T § 76.004(b). As a result, Goethals also was acting in his capacity as a state official and not as a final policymaker for Dallas County for purposes of section 1983.

Finally, Arnone alleges Bowles directly supervised or participated in the polygraph policy, specifically permitting the arrest, detention, and confinement of probationers on a warrant based solely on polygraph examination results, and failed to train deputies and employees on state law regarding the inadmissibility of polygraph results.  Under Texas law, county sheriffs

are final county policymakers in the area of law enforcement.  *County of El Paso v. Dorado*, 180 S.W.3d 854, 870 (Tex. App.—El Paso 2005, pet. denied); *Colle v. Brazos County*, 981 F.2d 237, 244 n.35 (5th Cir. 1993).  However, the Texas Code of Criminal Procedure requires a sheriff to execute "legal process which it is made his duty by law to execute."  *See* CRIM. PRO. art. 2.16; *see also* TEX. LOC. GOV'T CODE ANN. § 351.041(a) (sheriff's authority is "subject to an order of the proper court").  A sheriff does not have discretionary policy-making authority regarding executing warrants for community supervision violations.  *See, e.g.*, *O'Donnell v. Harris County*, 892 F.3d 147, 156 (5th Cir. 2018) (county sheriff who was not authorized to avoid executing judicial orders imposing secured bail does not qualify as a municipal policymaker under section 1983 with respect to policy doing so).  Here, the state court judge issued a capias for Arnone's arrest, and a deputy executed it.  Because the Sheriff's office was legally obliged to execute all lawful process, Bowles lacked discretionary policymaking authority and does not qualify as a municipal policymaker under section 1983 for purposes of Arnone's arrest and detention.  *See id.*

Because Arnone fails to allege and complain of policies and conduct attributable to officials with final policymaking authority for Dallas County, he fails to state a section 1983 claim for municipal liability against Dallas County.  Accordingly, his municipal liability claims against Dallas County must be dismissed.

E.    *MALICIOUS PROSECUTION*

Arnone asserts malicious prosecution as a separate ground for section 1983 liability, alleging "Dallas County through its final decision makers and policymakers …, and despite knowing that Texas law prohibited revocation of probation, adjudication of guilt on deferred and use of polygraphs, nonetheless chose to arrest and prosecute Plaintiff.  Furthermore, the Defendants intentionally withheld from and misrepresented to the Plaintiff and trial court that

polygraphs were admissible for such purposes."  Malicious prosecution, standing alone, is not a constitutional violation.  *Deville v. Marcantel*, 567 F.3d 156, 169 (5th Cir. 2009); *Castellano*, 352 F.3d at 945.  In *Castellano*, the Fifth Circuit explained that a section 1983 claim "must rest upon a denial of rights secured under federal and not state law."  *Castellano*, 352 F.3d at 942. Although initiation of criminal charges without probable cause may lead to constitutional violations that may be pursued under section 1983, "those claims are not claims for malicious prosecution and labeling them as such only invites confusion."  *Id.* at 953–54.  Accordingly, the Court dismisses with prejudice Arnone's "malicious prosecution" claim.

E.      CIVIL RIGHTS CONSPIRACY

Arnone alleges the defendants, all acting "within the scope of their employment and authority and under the color of state law, agreed among themselves and with others to act in concert to deprive [Arnone] of his clearly established Fourth (4th) and Fourteenth (14th) Amendment rights to be free of unreasonable search and seizures, wrongful conviction, wrongful incarceration and deprivation of liberty without due process of law and a fair adjudication procedure based upon competent and admissible evidence."  "To prove a conspiracy under section 1983, a plaintiff must allege facts that indicate (1) there was an agreement among individuals to commit a deprivation, and (2) that an actual deprivation occurred."  *Jabary v. City of Allen*, 547 F. App'x 600, 610 (5th Cir. 2013).  "Plaintiffs who assert conspiracy claims under civil rights statutes must plead the operative facts upon which their claim is based. Bald allegations that a conspiracy existed are insufficient."  *Lynch v. Cannatella*, 810 F.2d 1363, 1369–70 (5th Cir. 1987).

Arnone alleges no facts to show an agreement or any "operative facts" underlying the conspiracy claim.  *See id*.  Moreover, actions allegedly taken by employees of an entity are

considered to have been taken by the entity, and Arnone alleges Hill, Bowles, and Goethals were each employees and agents of the same entity, Dallas County. *See, e.g.*, *Salazar-Limon v. City of Houston*, 97 F. Supp.3d 898, 909 (S.D. Tex. 2015), *aff'd*, 826 F.3d 272 (5th Cir. 2016); *Swilley v. City of Houston,* 457 F. App'x 400, 404 (5th Cir. 2012) ("The City of Houston is a single legal entity and, as a matter of law, its employees cannot conspire among themselves."). Because Arnone has not pleaded sufficient facts to state a claim of conspiracy under section 1983, the claim is dismissed.

### CONCLUSION

Based on the foregoing, the Court **GRANTS** the motions to dismiss Arnone's Fourth Amended Complaint filed by Goethals (Doc. No. 90) and the County Defendants (Doc. No. 92) and **DENIES** Arnone's Motion to Extend Deadline to Respond and for Limited Discovery (Doc. No. 99).

Arnone's individual and official capacity claims against Hill and Goethals are **DISMISSED with prejudice**. Arnone's municipal liability claims against Dallas County are **DISMISSED without prejudice**. Arnone's malicious prosecution claim is **DISMISSED with prejudice**. Arnone's civil rights conspiracy claim is **DISMISSED without prejudice**.

Arnone does not request leave to amend his complaint, and he has amended it four times already. Generally, a court should give a plaintiff at least one chance to amend under Federal Rule of Civil Procedure 15(a) before dismissing an action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). Because the gravamen of Arnone's claims relate to conduct by officials acting for the State, the Court finds it unlikely Arnone can successfully plead a section 1983 cause of action. However, the Court will permit a motion for leave to amend his claims against Dallas County, if Arnone can do so in

compliance with the requirements of Federal Rule of Civil Procedure 11(b), on or before **May 11, 2020**.  Failure to timely file a motion for leave to amend the complaint with the proposed amended complaint attached will result in the Court entering a final dismissal order in this case.

      **SO ORDERED**; signed April 30, 2020.

ADA BROWN
UNITED STATES DISTRICT JUDGE