**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER GEORGE ARNONE, | § § § | |
| Plaintiff, | § § | Civil Action No. 3:17-cv-03027-E |
| v. | § § | |
| SYED, et al., | § § | |
| Defendants. | § § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is the motion to dismiss Plaintiff's Fifth Amended Complaint filed by defendant Dallas County, Texas (Doc. 118). Having considered the motion, the parties' briefing, and applicable law, the Court concludes the motion should be granted for the reasons below.

### BACKGROUND

The following is taken from plaintiff Christopher George Arnone's Fifth Amended Complaint (complaint). In November 2002, Arnone was charged with allegations of sexual abuse against his son. The Dallas County District Attorney's office (DA's office) presented Arnone with a plea deal, and he entered an open plea of nolo contendere to a single charge of felony injury to a child. The trial court placed Arnone on ten-years deferred adjudication community supervision. As a condition of his community supervision, Arnone was placed on the sex offender caseload, which included a treatment program and requirement to submit to polygraph tests.

Arnone was dismissed from his sex offender treatment as a result of his polygraph test results. The DA's Office moved to proceed with an adjudication of guilt on the original charge, and the trial court adjudicated Arnone guilty and sentenced him to prison. Arnone served almost

1

thirteen years until, on October 7, 2015, the Texas Court of Criminal Appeals granted his application for writ of habeas corpus and set aside his adjudication of guilt, concluding adjudication based on his dismissal from sex offender treatment as a result of failed polygraph tests was improper.  Arnone was released from custody on November 13, 2015.

According to Arnone, former Dallas County District Attorney William T. Hill, Jr. (DA Hill) implemented a policy to pursue probation revocations and/or adjudications of guilt without evidence of guilt or wrongdoing other than polygraph results, despite knowing that such evidence was inadmissible.  Indeed, the DA's Office repeatedly opposed the admissibility of exculpatory polygraph results.  Thus, Dallas County "violated [Arnone's] Fourteenth Amendment right to a fair adjudication by using inadmissible and unreliable polygraph results to manufacture probable cause, revoke probation/deferred adjudication and prosecute" him.

Arnone alleges the polygraph policy was ongoing and a widespread custom and practice, as evidenced by his revocation as well as a pattern of revocations of other individuals.  Although not all during DA Hill's tenure, the DA's Office also offered polygraph test result evidence as probable cause to revoke probation/deferred adjudication and as evidence of guilt for the following individuals: Michael Stewart Miller, Jesis J. Pena, Joel Dervin Willis, Alonzo Lewis, Benjamin Holmes, and Joe Glen Pickett.  Absent a widespread custom and practice, Arnone alternatively alleges that there was a failure to supervise and/or train DA Hill's subordinates. Specifically, "there was deliberate indifference on the part of those who supervised and/or trained the persons engaging in such conduct, including [DA Hill]."

Arnone filed this action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights.  He has amended his complaint five times, and the Court previously granted motions to dismiss individual and official capacity claims against Ron Goethals of the "Dallas County

Community Supervision and Probation Department" and DA Hill and official capacity claims against Dallas County Sheriff Jim Bowles (Doc. 112).  The Court, however, allowed Arnone an opportunity to replead his municipal liability claim against Dallas County.

Dallas County again moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) because (1) the statute of limitations bars Arnone's section 1983 claim, and (2) the complaint fails to plead a plausible claim for relief against Dallas County.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  If a plaintiff fails to satisfy Rule 8(a), the defendant may file a motion to dismiss the plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6).

On a Rule 12(b)(6) motion to dismiss, a court may consider only the pleadings, including attachments to the complaint and attachments to the motion if they are referred to in the complaint and central to the plaintiff's claims, and "matters of which judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Communities Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019); *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).  The court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205 (quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

3

draw a reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).  "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  If the facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint does not show the plaintiff is plausibly entitled to relief.  *Iqbal*, 556 U.S. at 678.

ANALYSIS

A.   *STATUTE OF LIMITATIONS*

Dallas County first contends, as it has before, that the statute of limitations bars Arnone's claims because the possible dates on which his cause of action accrued occurred more than two years before he filed suit.  The Court denied its previous motion to dismiss on this ground, finding Arnone brought suit within the two-year statute of limitations.  The Court, again having considered the arguments raised by Dallas County and without setting out those arguments or the Court's analysis here, finds the motion to dismiss should be denied on this ground for the reasons stated in its prior Memorandum Opinion and Order (Doc. 112).

B.   *MUNICIPAL LIABILITY*

Dallas County next asserts Arnone fails to state a section 1983 claim for municipal liability because he does not allege sufficient facts to (1) connect a constitutional harm to a Dallas County policymaker, (2) show a Dallas County policy or widespread custom or practice that fairly represents municipal policy, (3) show the polygraph policy was the moving force behind a constitutional violation, (4) plead a deprivation of a federal constitutional right, (5) show DA Hill was personally involved in the alleged wrong, and (6) show a failure to

train/supervise.

Section 1983 provides a cause of action for individuals who have been "depriv[ed] of [their] rights, privileges, or immunities secured by the Constitution and laws" of the United States by a "person" acting under color of state law.  42 U.S.C. § 1983; *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  Thus, for relief under section 1983, a plaintiff must establish the conduct complained of (1) was committed under color of law, and (2) deprived the plaintiff of rights secured by the Constitution or laws of the United States.  *See Hernandez v. Maxwell*, 905 F.2d 94, 95 (5th Cir. 1990).

Local governments are "persons" within the meaning of section 1983.  *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978).  However, a local government "may not be sued under § 1983 for an injury inflicted solely by its employees or agents." *Id*. at 694. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.*; *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 532 (5th Cir. 1996).  "In order to hold a … local government liable under § 1983 for the misconduct of one if its employees, a plaintiff must initially allege that an official policy or custom was the cause in fact of the deprivation of rights inflicted," and the "description of a policy or custom and its relationship to the underlying constitutional violation ... cannot be conclusory; it must contain specific facts." *Spiller v. City of Texas City*, 130 F.3d 162, 167 (5th Cir. 1997) (internal quotation marks and citation omitted).

1.  <u>Official Policy or Custom</u>

Dallas County moves to dismiss Arnone's claim, asserting he fails to allege sufficient facts to plead a Dallas County policy or widespread custom or practice that fairly represents

municipal liability or that DA Hill was personally involved in Arnone's adjudication of guilt. Official policies generally are "written policy statements, ordinances, or regulations." *Alvarez v. City of Brownsville*, 904 F.3d 382, 389–90 (5th Cir. 2018) (en banc).  A plaintiff also can show "a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* at 390.  A single decision may constitute municipal policy in "rare circumstances" if an official or entity possessing "final policymaking authority" for an action "performs the specific act that forms the basis of the § 1983 claim." *Davidson v. City of Stafford*, 848 F.3d 384, 395 (5th Cir. 2017).

Arnone does not complain of a policy statement, ordinance, or regulation,  Instead, he alleges "the unconstitutional revocation of deferred adjudication, prosecution and incarceration of Mr. Arnone as well as a pattern of other individuals" evidences "an established and ongoing policy." (Doc. 117, p. 5).  He further alleges that, even if the decision in his case was a "single decision," it constitutes a Dallas County policy because DA Hill "authorized the use of inadmissible evidence … with the knowledge that it was a violation of constitutional rights." Arnone alleges it was "clear" that DA Hill was aware that polygraph results were inadmissible because the DA's office "repeatedly opposed the admission of *exculpatory* polygraph results and courts reiterated they were not admissible for any purpose" (*Id.*, p. 5-6).

For municipal liability to be based on a widespread practice or custom,  a plaintiff must allege facts "showing a pattern of abuses that transcends the error made in a single case."  *See Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001).  The pattern "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of city employees." *Davidson*, 848 F.3d at 396 (quoting *Peterson v. City of Fort Worth, Tex.*, 588

F.2d 838, 850 (5th Cir. 2009)). There also must be "similarity, specificity, and sufficiently numerous prior incidents." *Id.*

Here, Arnone provides the names of six individuals for whom the DA's Office offered polygraph test results as evidence to revoke probation/deferred adjudication and of guilt.  The DA's Office moved to proceed to an adjudication of Arnone's guilt in 2003, but its motions to revoke/adjudicate in the other six cases were filed over a span of fifteen years (1998, 1999, 2007, 2010, 2012, 2013).[1]  Dallas County contends that, due to the large number of revocations the DA's Office handles each year, the fact that polygraph test result evidence was relied upon in these six cases is insufficient to allow the Court to infer the existence of a custom having the force of a Dallas County policy.  At this Rule 12(b)(6) stage, however, the Court finds Arnone has sufficiently pleaded facts to support a reasonable inference that other individuals were treated similarly and to plausibly allege a widespread custom or practice.  *See Jackson v. Valdez*, --- F. App'x ---, 2021 WL 1183020, at *5 (5th Cir. Mar. 29, 2021).

Arnone also alleges that, even if the decision in his case was a "single decision," it constitutes a Dallas County policy because DA Hill "authorized the use of inadmissible evidence … with the knowledge that it was a violation of constitutional rights."  To impose liability for a single decision, however, the decision must be rendered by an individual with "final policy making authority" and must be made with "deliberate indifference to the risk that a violation of a particular constitutional or statutory right with follow."  *Gelin v. Houston Auth. of New Orleans*,

---

[1] *See Pickett v. State*, No. 05-98-01174-CR, 1999 WL 793397, at *1 (Tex. App.—Dallas Oct. 6 1999, no pet.); *Miller v. State*, No. 05-99-01740-CR, 2001 WL 6790, at *1 (Tex. App.—Dallas Jan. 3, 2001, no pet.); *Holmes v. State*, No. 05-10-01199-CR, 2011 WL 2120768, at *1 (Tex. App.—Dallas May 31, 2011, no pet.); *Lewis v. State*, No. 05-13-00400-CR, 2014 WL 2802410, at *1 (Tex. App.—Dallas June 17, 2014, no pet.); *Willis v. State*, No. 05-13-00530-CR, 2014 WL 5475490, at *1–3 (Tex. App.—Dallas Oct. 30, 2014, no pet.); *Pena v. State*, 508 S.W.3d 599, 601 (Tex. App.—Dallas 2016, pet. ref'd).
.

456 F.3d 525, 527 (5th Cir. 2006); *Brown v. Bryan Cnty, Okla.*, 219 F.3d 450, 460–61 (5th Cir. 2000) (citing *Bd. of Cnty. Comm'rs, Bryan Cnty., Okla. v. Brown,* 520 U.S. 397, 404–05 (1997)).

Arnone does not allege any facts to show DA Hill was personally involved in or personally aware of any of the events about which he complains.  Nor does Arnone's conclusory assertion that DA Hill knew that polygraph test results were inadmissible for all purposes, citing the fact that the DA's Office often sought to exclude such evidence, allege facts to show he acted with deliberate indifference to Arnone's rights.  Indeed, it was not until 2012 that the Texas Court of Criminal Appeals held a trial court abuses its discretion in a revocation proceeding by allowing evidence of, or based on, polygraph test results because the tests are unreliable, *see Leonard v. State*, 385 S.W.3d 570, 582 (Tex. Crim. App. 2012), and 2013 when the Texas Legislature enacted a statute prohibiting a court from "proceed[ing] with an adjudication of guilt on the original charge if the court finds that the only evidence supporting the alleged violation of a condition of deferred adjudication community supervision is the uncorroborated results of a polygraph examination."  *See* CRIM. PRO. art. 42A.108(b) (formerly CRIM. PRO. art. 42.12, § 21(c)).  Accordingly, the Court finds Arnone fails to allege facts to show that his adjudication of guilt alone is sufficient to impose municipal liability.

  2.  Federal Constitutional Violation

Dallas County also contends that Arnone fails to plead facts to permit a reasonable inference of the deprivation of a federal constitutional right.  Specifically, Arnone's adjudication of guilt was set aside because the evidence to support the violation of his community supervision condition was polygraph test evidence, which is unreliable and, therefore, inadmissible under Texas law, *see Ex Parte Arnone*, No. WR-60,218-02, 2015 WL 5853688, at *1 (Tex. Crim. App. Oct. 7, 2015) (citing *Leonard,* 385 S.W.3d at 582–83), but the Fifth Circuit has "denounced" a

per se rule that polygraph test evidence is inadmissible.  *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th

Cir. 2000) (citing *United States v. Posado,* 57 F.3d 428, 434 (5th Cir. 1995)).

To maintain a section 1983 claim, a plaintiff must prove that he was deprived of a federal

statutory or constitutional right under color of law.  42 U.S.C. § 1983; *Virginia v. Moore,* 553

U.S. 164, 166–67, 176 (2008) (police officer's violation of state law in making arrest does "not

alter the Fourth Amendment's protections" and, by itself, render the arrest unconstitutional under

the Fourth Amendment).  "To pass Constitutional muster under the Fourteenth Amendment Due

Process clause, the revocation of deferred-adjudication probation must not be 'totally devoid' of

evidentiary support."  *Williams v. Dretke,* No. 4:05-CV-1735, 2006 WL 492404, at *11 (S.D.

Tex. Feb. 28, 2006) (quoting *Douglas v. Buder,* 412 U.S. 430, 432 (1973) (per curiam)).  The

Court finds that whether the evidence may or may not have been admissible in federal court is

not relevant to Arnone's allegations.  He alleges that, knowing the evidence was unreliable and

inadmissible in state court, the DA's Office nevertheless used it as the basis to petition for an

adjudication of guilt.  At this stage, the Court finds Arnone sufficiently alleges a deprivation of a

federal constitutional right under color of law.

Dallas County also contends Arnone fails to allege facts to support his conclusion that

unconstitutional use of the polygraph by the DA's Office was the moving force behind the

violation of Arnone's constitutional rights and the corresponding harm.  In support, it cites

authority for the proposition that polygraph testing remains a permissible condition of

community supervision, *see, e.g., United States v. Locke*, 482 F.3d 764, 767–68 (5th Cir. 2007),

and asserts the state court, having already made a determination of Arnone's guilt, could have

simply relied on the evidence before it, including Arnone's stipulation of evidence admitting to

the offense.

A section 1983 plaintiff must show that an official policy or custom, which was "either unconstitutional or promulgated with deliberate indifference that a known or obvious unconstitutional consequence would result," caused his harm.  *Piotrowski v. City of Houston*, 237 F.3d 567, 579 (5th Cir. 2001).  Although there may have been other evidence to support the state court's adjudication of guilt, Arnone alleges there would have been no adjudication but for the DA's Office petitioning for it.  The Court finds that, at this Rule 12(b)(6) stage, Arnone sufficiently alleges the polygraph policy is the moving force behind the deprivation of his constitutional rights.

3.  Dallas County Policymaker

Dallas County also contends Arnone's complaint fails to link a Dallas County final policyholder to the injury he alleges.  Specifically, the allegations against DA Hill involved conduct within the scope of his prosecutorial function as a state actor and not a Dallas County policymaker.

"[A] county may only be held liable for acts of a district attorney when he 'functions as a final policymaker for the county.'"  *Brown v. Lyford*, 243 F.3d 185, 192 (5th Cir. 2001) (quoting *Esteves v. Brock*, 106 F.3d 674, 678 (5th Cir. 1997) (when acting in prosecutorial capacity to enforce state laws, district attorney is not a policymaking official for the county); *Krueger v. Reimer*, 66 F.3d 75, 76–77 (5th Cir. 1995) (per curiam) (actions of a Texas district attorney pursuant to his role as State advocate preparing for the initiation of criminal proceedings or trial do not constitute official policy for which a county can be held liable).

"If a district attorney exceeds the scope of his prosecutorial duties, a county may be held liable under certain limited circumstances."  *Krueger*, 66 F.3d at 77 (citing *Turner v. Upton County, Texas*, 915 F.2d 133, 137–38 (5th Cir. 1990)).  In *Turner*, the plaintiff alleged that the

county sheriff planted evidence and conspired with the district attorney to force the plaintiff to plead guilty.  The Fifth Circuit found the sheriff was the final policymaker for the county in the area of "preserving the peace in his jurisdiction and arresting all offenders," and held that "[t]he sheriff's and the district attorney's alleged participation in the conspiracy, if proven, will suffice to impose liability on the county."  *Turner*, 915 F.2d at 137–38.

In *Crane v. State of Tex.*, 759 F.2d 412, 429–30 (5th Cir. 1985), the Fifth Circuit concluded a Dallas County District Attorney Office policy of issuing misdemeanor arrest warrants without probable cause was within the district attorney's policymaking capacity on behalf of the county because his authority for establishing the related administrative procedures for filing and processing a criminal information derived from his county office.  *Id.* at 429–30; *see also Booth v. Galveston Cnty.*, 352 F. Supp.3d 718, 744–45 (S.D. Tex. 2019) (plaintiff sufficiently alleged district attorney's policymaker status at Rule 12(b)(6) stage where district attorney promulgated misdemeanor and felony bail schedules with knowledge of district court judges and magistrates strictly adhered to and administered the schedules); *Jones v. Pillow*, No. 3:02-cv-1825-L, 2003 WL 21356818, at *2 (N.D. Tex. June 10, 2003) (court did not dismiss municipal liability claim when plaintiff alleged district attorney routinely accepted cases without a probable cause determination made by any court).

Under Texas law, a state court may impose a term of deferred adjudication community supervision in a criminal case and may impose "any reasonable condition … that is designed to protect or restore the community, protect or restore the victim, or punish, rehabilitate, or reform the defendant."  *See* TEX. CODE CRIM. PRO. art. 42A.301 (formerly, CRIM. PRO. art. 42.12, § 5, 11(a)).  It further authorizes a state court to determine whether to proceed to an adjudication of

guilt on the original charge on motion by the attorney representing the State.  CRIM. PRO. art. 42A.108(b), (c)(1), (2) (formerly, CRIM. PRO. art. 42.12, § 21(e)).[2]

The record from Arnone's state court action[3] shows the state court entered the deferred adjudication order imposing, among others, condition (o), which required Arnone participate in sex offender counseling and "abide by any and all treatment directives, comply with rules and regulations of the approved agency and continue in said treatment until released by the Court." Thereafter, Arnone was "unsuccessfully discharged from sex offender treatment … due to failing that [sic] last two offense polygraphs taken and for not accepting responsibility for offense which had made him untreatable in an outpatient facility."  The DA's office filed a motion to proceed with an adjudication of guilt on the original charge, alleging Arnone violated condition (o) in that he "did not abide by the rules and regulations of the facility," and the state court subsequently entered an order adjudicating guilt and sentencing Arnone to fifteen years' confinement.

Arnone alleges he was subject to an official policy by DA Hill to seek revocations and/or adjudications where the only evidence to show a violation of a condition of community supervision is inadmissible polygraph test results.  To the extent DA Hill implemented such a policy, the Court finds that his authority for such a decision does not derive from his county office; instead, the decision fell within the scope of his prosecutorial duties to enforce state laws, which provided for revocations and/or adjudications on the basis of a violation of a condition of community supervision imposed by a state court.  *Compare Crane*, 759 F.2d at 430 ("The County ... acted through the District Attorney; he selected the means by which the County was to achieve a sound and legally sufficient capias system. His choice of an unsound and legally

---

[2]  Beginning in June 2013, the relevant statute provides that a court "may not proceed with an adjudication of guilt on the original charge if the court finds that the only evidence supporting the alleged violation of a condition of deferred adjudication community supervision is the uncorroborated results of a polygraph examination."  CRIM. PRO. art. 42A.108(b) (formerly CRIM. PRO. art. 42.12, § 21(c)).

[3]  *Arnone v. State*, F-0201999 (*see* internet docket sheet available at http://courtecom.dallascounty.org/publicaccess).

insufficient system represents County policy for which the County is liable.").  Because DA Hill's decision cannot fairly be attributed to a Dallas County policy, the Court finds Arnone fails to state a municipal liability claim for relief that is plausible on its face.

4.   Failure to Train/Supervise

Dallas County asserts the conclusory allegations supporting Arnone's failure to train/supervise claim also fail to state a section 1983 claim on which relief can be granted. Arnone alleges, in the absence of a widespread custom or practice, there was a failure to supervise and/or train DA Hill's subordinates.  And, because DA Hill was aware that polygraph test results were inadmissible and they were nevertheless used by DA's Office prosecutors for revocations/adjudications, "there was deliberate indifference on the part of those who supervised and/or trained the persons engaging in such conduct, including [DA Hill]."

To hold a municipal liable for failure to train/supervise, a plaintiff must allege facts showing: "1) the [municipality] failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights."  *Pena v. City of Rio Grande City*, 879 F.3d 613, 623 (5th Cir. 2018) (citing *Thompson v. Upshur Cnty.*, 245 F.3d 447, 459 (5th Cir. 2001)).  A plaintiff must "allege with specificity how a particular training program is defective."  *Westfall v. Luna*, 903 F.3d 534, 552 (5th Cir. 2018) (citation omitted).  Municipal "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."  *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Because Arnone's claim relates to the conduct on the part of DA's Office prosecutors, Dallas County cannot be liable under section 1983 for failure to train those prosecutors regarding

the admissibility and use of polygraph test results because the prosecutors were state officers. See *Mowbray v. Cameron Cnty., Tex.,* 274 F.3d 269, 278 (5th Cir. 2001) (county could not be liable for failure to train assistant district attorneys on *Brady*[4] violations); *e.g.*, *Wooden v. State*, No. 4:05-cv-022-A, 2005 WL 1473854, *2 (N.D. Tex. June 21, 2005) (where plaintiff alleged that, if district attorney office employees were properly trained, supervised and controlled, they would have, or should have, known there was no credible evidence to support plaintiff's indictment and prosecution for aggravated robbery, his claim related to prosecutorial functions and Tarrant County could not be held liable for failure to train, supervise, or control the employees).  Further, Arnone's conclusory allegation that, if there was no widespread custom, then there must have been a failure to train/supervise, fails to allege with any specificity how Dallas County prosecutor training or supervision was inadequate.  For these reasons, the Court finds Arnone fails to state a section 1983 failure to train/supervise claim.

### CONCLUSION

Based on the foregoing, the Court **GRANTS in part** and **DENIES in part** Dallas County's motion to dismiss Arnone's Fifth Amended Complaint (Doc. No. 118).

The Court grants the motion to dismiss because (1) Arnone fails to allege an official policy or custom based solely on his case or a failure to train/supervise, and (2) the alleged polygraph policy of DA Hill is not fairly attributed to Dallas County.  For these reasons, Arnone's section 1983 claim against Dallas County must be dismissed.

In all other respects, the motion is denied.

Because Arnone already has had multiple opportunities to replead his allegations, the Court finds his claims against Dallas County should be and are **DISMISSED with prejudice**.

---

[4] *Brady v. Maryland*, 373 U.S. 83 (1963).

**SO ORDERED**; signed May 10, 2021.

ADA BROWN
UNITED STATES DISTRICT JUDGE